case number 20-1117 transportation division of the international association of sheet metal air rail and transportation workers et al petitioners versus federal railroad administration and united states department of transportation mr mckinley for the petitioner miss mondale for the respondents morning mr mckinley you may proceed good morning and may it please the court sean mckinley i'm representing the petitioners in this case uh international association of sheet metal air rail transportation workers uh brotherhood of locomotive engineers and trainmen and the academy of rail labor attorneys um this is a case where uh this the petitioners are seeking review of a federal agency rulemaking in this case this is the the agency in question is the federal railroad administration and the rulemaking had to deal with uh so-called risk reduction programs uh which are mandated by the rail safety improvement act of 2008 and now when the fra is the fra has broad authority granted to it by congress uh to oversee safety concerns in the united states rail transportation system that extends to rulemakings the fra is the body that's primarily responsible for rulemakings in the the fra is limited by uh you know the mandates from congress uh as expressed through various statutes in this case uh the limitations on the fra's authority is limited by the rail safety improvement act as mentioned and also the administrative procedure act as this is a formal notice and comment rulemaking as that is defined under the apa mr mckinley let me start if i may with a couple of questions about uh your standing um and and maybe about remedies and there may be some overlap um one of your arguments is that we should vacate the rule because uh it was tardy uh by about 11 years or four years it was very late um and i would take it to be that your injury for article three standing purposes is well there was this gap in time when the rule should have been in effect when a rule should have been in effect and it wasn't in effect for that gap of time um and we were injured because i guess a rule would have been better protecting you um in terms of safety but in terms of redressability you know we can't go back in time we and so i'm not sure how vacating the rule or even just remanding it without vacating it with regard to the tardiness would do anything to redress the injury you suffered of going those 11 years or four years without a rule in place so can you help me with that how is this with regard to the timeliness claim how is this a redressable injury well uh thank you your honor i guess to answer that i would say that the the congress and the fra's own regulations as you kind of uh intimated uh require that the fra complete rule making is within 12 months from the date that the nprm is published in the federal register um and as far as just to get us directly to your question uh the the the first npr the nprm was issued in february of 2015 when the final rule was promulgated in february of 2020 so we're talking about a five-year gap there it was supposed to be done in a year so let's say that there was a four-year gap where you were injured because a rule was not in place how is that injury redressable by this court well i would i would define the injury a little bit differently your honor i would define it as the the process for the rule making is 12 months as we said uh during that process the fra is required to solicit and receive public comments um that's a it's an active uh a process with the the public and stakeholders in the industry in this case the fra had accepted rule comments uh in april of 2015 through essentially october through a few different rounds of comments uh and then did nothing for four years and i think you file an action seeking to compel the agency to complete what they're supposed to do i mean if we followed your approach do you know how many things we'd vacate agencies are rarely on time but i put that but to add to what my colleague is saying it doesn't make sense intuitively how is that giving relief what do you want us to do just vacate and say go away you can't do anything now why do it promptly or what what are you saying well i would say vacate and the if the fra to the nprm can be reissued and they can complete the rule making within a year i'm sorry your honor it's still late well it the this particular final rule is late but if the fra presumably restarted the process they would have 12 months then to complete the rule making uh under the under uh 49 cfr 211 you commented right during during the notice and comment period your some of these petitioners did file comments is that right yes and and so is there is there something that happened as a result of the delay from a procedural perspective from a you know not that due process applies but from a that's from a procedure is there some is there something that happened procedurally that went wrong that you think would go right if we vacated and remanded this and did it all over again well i think that as i was getting to before i think the issue is that the fra was acting on information that was four years after it was submitted this is an industry that changes from year to year technology changes safety concerns change year to year the fra's final rule here is based on stale information at this point stale comments from five years ago and i think you'd be specific about that in a way that's specific enough to to give me something to go on well certainly i i guess for example i would say part of the rail safety improvement act was the implementation of positive train control technology uh it's a essentially a technology that is a additional safeguard on trains that permits uh if if a train misses a a conductor engineer miss a signal the train can enter into a stop like emergency stop or something like that um this technology there was information that was now uh but if the rule had been promulgated earlier you still wouldn't right have known you still would have been promulgated based on the the new rule i guess that's another way of saying is if the information between 2015 and 2016 is now stale the rule had it been promulgated in 2016 was still going to be promulgated based on that stale information even if it had been promulgated on time so i'm not sure i'm with you there you can respond to that and if you would also respond to this you you put a heavy emphasis on vacating as opposed to just remanding not just for this claim but for the fatigue management claim as well is is your position that you want us to either vacate or do nothing is your position that a remand is not acceptable to you i i wouldn't say not acceptable i would say the law requires under the apa section 706 of the apa just that requires that the agency action be set aside um but this court has precedents about when to vacate and remand versus when to just remand without vacating and we look at how disruptive would it be and we look at how how how bad how wrong how easy to fix the it would be the original rule that that has some problem that it i mean under that test are you saying uh we should either vacate or just deny your petition well i i i believe that vacator is the vacation is the remedy here um because nothing prevent as i to restart nothing prevents the fra from restarting the rulemaking process with information that expression available and um i i think based on the circumstances that exist is this is a rule that is let me re i understand the argument but i just want to know if you're also making alternative argument and then i'll get out of the way here um assume that we do we conclude that vacating is not the appropriate remedy and assume that we are inclined to sue espont a even though you didn't ask for this remand maybe on the fatigue management question without vacating is it your position that we should not sue espont a remand that instead of that we should just deny the petition well if that were the case i would we would welcome the the suespanti action to remand for for further rulemaking if that's what the court decides okay appropriate i didn't mean to monopolize the the questions here so i'll stop mr oh go ahead is it your how do you read do you read the statute i mean moving to the fatigue management plan do you think it would be lawful for the fra to accept a risk management program that did not include a fatigue management plan well i think that goes to kind of the heart of the issue of what we argue with the fatigue management plan is that congress mandated that of risk reduction plans um and i i i would argue and i put to the court here that uh a risk reduction plan that does not have a fatigue management plan doesn't comply with the mandate of congress uh hopefully that answers your question well what if that plan i mean is there anything in the statute that requires all of those components to be approved by the agency at the same time right well i would say that there's there's not anything that requires it to uh explicitly to be all approved at the same time but i would point to the subsection in the rsia where the fatigue management plans are included it's uh it's a required component so then the question becomes i believe uh at what point then are fatigue management plans to be then included in risk risk reduction but how long are we to go with risk reduction plans that do not have fatigue that claim though isn't yet ripe is it right so if for instance the agency begins accepting these plans or or say we call them partial risk management plans because they don't have the risk manage the fatigue management component um wouldn't your claim then only become ripe at the point at which the agency is you know regularly accepting these risk um these risk programs without a fatigue management plan well your honor i would say that at this point the development of risk reduction plans is now currently ongoing this is the process there to be submitted by class one carriers uh august 21st of this year so that development is currently ongoing i if you're suggesting that we would have to wait until plans are submitted for review by the fra and the fra then approves of these plans i in order for the action to be right but i don't know if i necessarily agree with that because i think that the final rule is clear and the fra has stated in its intent clearly that they're moving forward with this without the fatigue management plan component at this time uh and that is how the process is going to move forward uh and the fra has indicated that they're doing a separate rule making with fatigue management plans they issued the nprm for that i believe on december 9th of 2020 but based on the timeliness of their how long it took the fra to issue a final rule with the risk reduction plan i i think we could be looking at a period of years without fatigue management plans how much time between the uh end of the comment period and the final rule uh the the end of the comment period uh the fra had reopened it twice i believe the comment period ended uh i i hesitate to say a specific day but it was mid-october of 2015 and then the final rule was issued on february 10th of 2020 so that's more than four years four years and two months or so um okay okay um and i guess i we talked we discussed why i'm i guess i'm into my rebuttal time so i guess i'll reserve what's what's left okay do my colleagues have any further questions not me okay thank you thank you miss mondell good morning your honors may it please the court amanda mondell on behalf of the respondent agencies this petition would should be denied and i'd like to start by responding to two of the points that petitioner has raised today the first is with respect to the remedy that they've requested as the court's questions suggests vacater here doesn't make sense as a practical matter and it also is a remedy that no court has ever ordered with respect to delayed agency action at least as far as when a statute doesn't have a penalty for non-compliance which is exactly the case here and i think as judge edward points out you know if if it were really up to the courts to vacate a rule every time an agency misses a statutory deadline there would be vacater constantly and it would stymie and bottleneck agency operations even further and i think the point is underscored by the fact that you know petitioners have suggested an argument today that you know part of the reason why maybe vacater makes sense is because the rule might have been relying on stale information but the only example that they've now offered is a part of the rule that they haven't even challenged which is about positive train control so even that doesn't serve as a basis for vacater here i think at the end of the day you know this is a rule that unfortunately took several years but it wasn't the result of the agency thumbing its nose at congress or flouting the congressional you know requirements to attempt to make this rule in a timely fashion this is a rule that is you know massive it involves several components meetings with stakeholders and the agency wisely acknowledged that reopening the comment period would have been necessary that several public hearings would have been required to push this rule out and ultimately we do have a rule that i think petitioners agree needs to exist in some form so vacating it we're bringing us back to the status quo where there weren't extensive regulations in this area and let me ask you about the performance-based standards which your opposing counsel didn't didn't have a chance to touch on there's nothing wrong with performance-based standards at least in terms of what the statute allows what apa would allow but i had a hard time finding out what the standard is in this standard and so i have some concern that the standard is so non-specific here that it's a standardless standard uh so can you can you help me with with that a little bit um and and maybe as you do so i'd be curious to know what precedent you would recommend i read where a court finds not here well respectfully your honor we don't think there's a non-specific standard i mean congress's mandate here is quite broad to reduce safety hazards and safety risks on train operations and so to accomplish that objective the performance-based aspect of this rule is first requiring railroads to identify those safety objectives on their systems so perhaps some railroads have issues with derailment that would be an objective that they would achieve under this rule would be reducing derailment other railroads might deal with more environmental-based hazards maybe other railroads deal with electronic or technological issues so the rule puts it at first you know at the first step in the railroad railroads corner to identify those objectives and then requires them to identify a process or a system of steps that can address those objectives and mitigate those risks and in terms of those objectives how would anyone ever know if those objectives are enough so like let's say that a train has 500 of a specific type of infraction per year on average over the past decade and they they set a goal of improving that so that they now only have 499 of those infractions per year going forward I mean would that satisfy the performance-based standard and if it wouldn't why wouldn't it that's a good question your honor and I think there's two responses to that I think at the first we have to take a step back and realize that this is an iterative process that isn't just fixed in stone so the railroads are not just setting objectives attempting to meet those objectives and then never addressing additional safety risks to begin with it might well be that when there are 500 infractions reducing that down by one is actually a significant improvement but this rule wouldn't just require them to stop there railroads are constantly required to address additional risks on their system and the second aspect of my response to your question your honor is that we know that this would be you know a good step to take because this is a collaborative process the rule envisions collaboration between FRA railroads and other interested stakeholders including petitioners here including labor unions and labor unions have the opportunity to raise these additional concerns both to the railroads and to FRA so that FRA is aware of you know what risks exist on these systems and how best to address them so I don't think there's an oversight problem there what's the difference between non-binding guidance from the agency and your standard which is reportedly a legally binding standard well your honor this this performance-based standard this type of rule you know requires these railroads to put together a plan that have objectives and certain processes in there that that the agency is going to approve and it requires periodic audits so it's not as if the agency sort of gives them a standard list guidance and railroads are off on their own to implement these programs as they see fit railroads have to do their own internal audits and FRA has to conduct periodic audits under the rule and if there is no compliance with the program or if the railroad is consistently falling short of its deadlines or an implementation schedule the statute itself authorizes the agency to seek civil penalties for that so I think there's but but I guess when would they seek the civil penalties is it a bad faith standard these railroads are supposed to do these internal audits and figure out what's not terrific and then they make some reforms and they set some goals and if they are doing that in good faith then they don't get penalized by the agency and if they're doing that in bad faith they do get penalized but is it a good faith standard your honor I don't think the standard is a good faith standard but you know candidly I think this is a case-by-case determination when you know if a railroad consistently is falling short of their obligations under the plan but what I can tell you is that again this is a collaborative process the agency is consistently reviewing these plans the railroads are consistently updating them and implementing additional measures to address new hazards or new risks and the employees themselves have the opportunity to flag any areas of concern for the agency in the course of the review process okay I can ask you so if we were to accept that the agency can promulgate the fatigue management plan separate right from its risk reduction program more generally can the agency accept the risk reduction programs without a fatigue management plan under the statute absolutely your honor and this was the second point that I wanted to raise in response even though they're required components of such a program absolutely and I think Judge Rao is your question to petitioners suggested earlier there's nothing in the statute that prohibits the agency from you know implementing congress's mandate in a series of steps to first require risk reduction programs that have certain components and then to require an additional component and there's nothing in the statute that prohibits or requires even railroads to implement all of these various components at the exact same time and here it's well within the agency's discretion to first promulgate a rule addressing components one two and three and to add an additional rule addressing that last component and just for what it's worth you know these fatigue management plan requirements once there is a final rule on fatigue management will automatically get incorporated into a railroad's risk reduction program so they're not it's not as if railroads are ignoring fatigue management issues altogether it's just that this part will come later it's so it's only a matter of time so do you agree that if say in in some number of years the agency did not have a fatigue management plan and these programs were readily you know regularly getting approved without fatigue management plans that would at some point be contrary to law or ultra viras or well I think I think petitioners might try to bring action to compel agency action which you know unlawfully withheld or unreasonably delayed but here of course we have a rule in the process the comment period has closed as of about a week and a half ago and there's really no reason to expect the agency not to work diligently to issue that rule I think it's worth pointing out that fatigue management is a much more discrete area than risk reduction programs which involved a number of different concerns and moving components it's also an area where the agency has extensive experience so you know I think it would be difficult to expect a rule to issue you know right away within the next few months because of course you know review processes take time but I would be surprised if a rule took an extensive amount of time in light of the fact that this is just the last piece of the puzzle here that's helpful your honors and if there are additional questions I'd be welcome to answer them my colleagues have any further questions no okay thank you your honors we just ask that petition be denied thank you miss mundell uh mr mckinley we'll give you uh two minutes you're muted I think you're on mute my apologies uh just to address briefly a few things that were said uh with regard to fatigue management plans um the uh respondents suggest that they're allowed to address uh this matter in a series of steps partial compliance one step at a time however it's been defined uh and I would like to point out though that you know there there is a requirement though that the FRA is required to explain why the problem should be treated this way the FRA has not put forth any explanation for why there needs to be a separate rule making for fatigue management plans and in fact I think the record really cuts against their argument that the the our FRA submitted the fatigue management plan issue to the RSAC working group it's called in 2012 which then passed on its recommendations then and then the FRA has not taken any action since until December 9th of 2020 and in just in the final rule they simply say it should be addressed in a separate rule making well why couldn't they be addressed at the same time we and these are just speculative questions because we don't know the answer because the FRA hasn't provided any sort of explanation for that um and to my last point I guess with Judge Walker you raised a good point with it's a non-specific standard and the FRA made it clear that it was particularly concerned with the financial burden on smaller railroads versus larger railroads when it comes to developing and implementing these plans now but I think you I think the final result Judge Walker as you said is that this is a very non-specific standard uh the FRA indicates in the ability to scale down the rule 60 percent they don't explain how the rule can be scaled down when you look at subpart b of the final rule there is no explanation in any way of how the rule can be scaled down so I think what we have is a a kind of ill-defined minimum standard that applies across all railroads and the standards have to be approved by the FRA well yeah yes Judge they do have to be approved by the FRA but I would also point out that the final rule doesn't contain any sort of real process for how these plans are to be approved uh that the FRA is fairly silent on that it seems to be I think as respondents stated a sort of case-by-case basis uh and that's not really uh a useful uh a rule here this is as I think Judge Walker said it's it's more guidance than anything else and I don't think in this case railroads necessarily know if they're going to how exactly that process works it's it's it's not defined uh in the final rule uh and I'm I'm into my time if there's any other questions I'd answer them if not I'll I'll I'll just ask that the uh rule be vacated thank you Mr. McKinley um this case is submitted
judges: Rao, Walker, Edwards